

FILED
FEB 23 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>MICHAEL KENNETH MARSDEN,<br><br>　　　　Debtor.<br>_____<br>BROOKE WEBB,<br><br>　　　　Plaintiff,<br>vs.<br><br>MICHAEL KENNETH MARSDEN,<br><br>　　　　Defendant.<br>_____ | Case No. 07-23473-A-7<br><br><br><br><br><br><br>Adv. No. 07-2170 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After a court trial, and after consideration of the post-trial briefing, the court makes the following findings of fact and conclusions of law in this proceeding to except a debt from the defendant's chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(6).

FINDINGS OF FACT

1.  Throughout plaintiff Brooke Webb's employment with American International Mortgage, Inc. (AIM), as an office

administrator/personal assistant to AIM's owner and President, defendant Michael Marsden, he was her supervisor.

2. The plaintiff, a former Ms. Citrus Heights, is an attractive young woman. Her prior work experience included general clerical positions in law firms and then in a tanning salon where she was working when the defendant met and hired her. The AIM position offered the plaintiff a significant wage increase, possible advancement, and flexible hours permitting the plaintiff to continue her studies at Sierra College. She began working at AIM in or about October 2004.

3. The plaintiff enjoyed the work, the schedule, and the pay. At first, the defendant was complimentary of her work and not offensive in anyway.

4. Not long after beginning her employment at AIM, the defendant began complimenting the plaintiff's legs. Because she was still a teenager, and because the defendant was approximately 40 years her senior, she did not understand these comments to mean the defendant had any sexual interest in her. The plaintiff merely assumed the defendant was being nice.

5. However, as the comments about her body continued and became more sexually explicit, the plaintiff realized the defendant was not just being friendly. He wanted a sexual relationship with the plaintiff. Over the course of the plaintiff's employment through June 2006, this became plainly evident:

    a. The defendant frequently commented on the plaintiff's body. These comments included such as: "You are beautiful;" "You have great legs, you should show them off more."

b. The defendant made comments to another employee regarding the plaintiff's breasts and the fact that she did not need, in his opinion, cosmetic augmentation.

c. He informed another employee that he was having a sexual relationship with the plaintiff.

d. The defendant directly propositioned the plaintiff, asking her to be his mistress.

e. The defendant would look down the plaintiff's blouse, invade her personal space by standing too close to her, and brush up against her when she was working and not aware that the defendant was nearby. On one occasion, the defendant approached the plaintiff from behind and brushed his hand over her backside.

f. Twice the defendant blocked the plaintiff's exit from a room while making sexual advances.

g. The defendant asked the plaintiff about her sex life.

h. The defendant told the plaintiff that he was going to receive sex pills from India that would enhance his sexual performance.

i. On one occasion, the defendant called the plaintiff into his office, shut the door, blocked the plaintiff's exit, then lifted his shirt to expose his abdominal area and then bragged about his physique.

j. The defendant told the plaintiff that he and a friend were going to start an Internet porn business. He explained that he intended to find young women to live in a home and place cameras in each room. The women would be on camera 24 hours a day and would be expected to perform sexual acts.

He asked the plaintiff to manage this operation.

    k.   If the plaintiff would agree to a sexual relationship with him, the defendant offered her, at various times, jewelry and other gifts, money, a place to live, and career advancement.

6.   There is corroboration for the plaintiff's allegations.

    a.   The defendant admitted to a series of sexual affairs with younger women who he either employed or carried on AIM's books as employees.

    b.   The defendant admitted a sexual fixation on much younger women.

    c.   He tried to characterize his sexual activity with these young women as some type of "serial monogamy" even though this activity took place while he was married.

    d.   At one point near the end of the plaintiff's tenure at AIM, the defendant informed her that a new girlfriend would begin working for AIM. He instructed the plaintiff to deny this relationship if she was asked by his wife. He said he would deposit $2,000 per month into his new girlfriend's bank account and that she would be living in one of his properties rent free. The defendant ended the conversation by telling the plaintiff that she could have had what he was giving his new girlfriend.

7.   The plaintiff was consistent in her rejection of the plaintiff's escalating advances. She told him that she did not like the constant comments about her body, that she had no interest in a relationship with him other than as an employee, and that she was engaged to be married. Still, the defendant's

advances persisted and became more insistent. As the situation worsened, the plaintiff became more blunt in her rejection of the defendant's and his advances.

8. And, as the plaintiff continued to resist the defendant's unwanted advances, he behaved more and more abusively toward the plaintiff.

   a. He became hypercritical of her work.

   b. On June 2, 2006, the plaintiff had planned to take a half-day off to be fitted for her wedding dress. She asked the defendant for, and was authorized, this time off. On June 2, after completing all her work, the plaintiff told the defendant that she was leaving. He responded that he did not remember giving her the time off. If she left, she would be required to make up the time over the weekend. This was not possible because of the planning for the plaintiff's upcoming wedding.

   c. On June 6, 2006, the plaintiff called in sick. Her fiancé delivered to the defendant a doctor's note confirming her illness. Approximately 2 hours later, the plaintiff found a note from the defendant on her doorstep saying that he was laying her off.

   d. The plaintiff and her fiancé were renting a home from the defendant. Immediately after her employment was terminated, the defendant served a 3-day notice to quit those premises.

9. While the defendant claimed to be terminating the plaintiff because his business was declining, this does not explain his eviction of her from the rental home. In reality,

the plaintiff's employment termination and eviction were in retaliation for her rejection of the defendant's sexual advances. To the extent other reasons were given by the defendant, they were a pretext.

10. The defendant's conduct caused humiliation and embarrassment to the plaintiff.

11. As a result of this conduct over an approximate 21-month period, the plaintiff suffered emotional distress, anxiety, and depression. Prior to her termination, the plaintiff received medication for these conditions from her physician. This treatment continues to the present date.

12. AIM had an employee manual. That manual provided that sexual harassment and discrimination would not be tolerated. The manual specified that sexual harassment was to be reported "higher-level supervisors or to any other individual in the organization authorized to deal with discrimination matters (e.g. Management)." To the extent the defendant maintains that the plaintiff failed to report his harassment to a supervisor or otherwise follow any other relevant internal procedure, this assertion makes little sense. He was her supervisor. Further, he controlled AIM, he had the power to fire any of its employees, and he made no secret of his affairs with other employees of AIM. To the extent the plaintiff may have failed to follow some internal procedure of AIM to complain about the defendant's conduct, this compliance was futile and would not have resulted in any relief for the plaintiff.

CONCLUSIONS OF LAW

1. This is core proceeding over which the bankruptcy court

has subject matter jurisdiction. See 28 U.S.C. §§ 157(b)(2)(I), 1334(b).

2. The defendant's conduct expressly and impliedly conditioned the plaintiff's employment at AIM on her willingness to engage in a sexual relationship with the defendant. See Cal. Govt. Code § 12940(j). These overtures were uninvited and unwanted by the plaintiff. The defendant knew and understood that they were uninvited and unwanted.

3. The defendant sexually harassed the plaintiff.

4. The defendant's conduct created a hostile work environment.

5. Further, as the plaintiff's supervisor, the defendant's failure to prevent her sexual harassment despite her repeated complaints, and his retaliation against her by terminating her employment, amounted to a failure to take reasonable steps to prevent her harassment. See Cal. Govt. Code § 12940(k).

6. By engaging in the foregoing conduct, the defendant caused a willful and malicious injury to the plaintiff's person within the meaning of 11 U.S.C. § 523(a)(6). See Gee v. Hammond (In re Gee), 173 B.R. 189 (9th Cir. B.A.P. 1994); Wright v. Turner (In re Turner), 204 B.R. 988 (9th Cir. B.A.P. 1997).

    a. The defendant's conduct was willful. That is, the defendant's actions were deliberate and intentional, were calculated to coerce the plaintiff into having a sexual relationship with him, and he knew that his conduct was offensive and unwanted by the plaintiff. Continuing this course of conduct over a 21-month period, notwithstanding the plaintiff's repeated rejections of the defendant, was

likely, even certain, to cause her emotional distress.

    b.   The defendant's conduct was malicious because it was calculated to injure the plaintiff and was without just cause or excuse. It was calculated to compel her to submit to the defendant's demands for an unwanted sexual relationship.

    7.   Due to the emotional distress and depression, the plaintiff has suffered damages of $50,000.

    8.   California law provides for attorney's fees in suits brought by employees for sexual harassment in the workplace. See Cal. Govt. Code § 12965(b). Counsel for the plaintiff shall file and serve a motion requesting reasonable fees pursuant to Fed. R. Civ. P. 54(d)(2).

    9.   The plaintiff is the prevailing party. The court will award to her reasonable costs of suit pursuant to Fed. R. Bankr. P. 7054(b).

    The court will enter an separate judgment.

Dated: 19 Feb 2009

By the Court

*[signature]*

Michael S. McManus
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Scott A. CoBen<br>1214 F St<br>Sacramento, CA 95814 | Christopher H. Whelan<br>11246 Gold Express Dr #100<br>Gold River, CA 95670 | Michael Kenneth Marsden<br>7804 Watson Way<br>Citrus Heights, CA 95610 |

DATED: 2/24/09        By: _____
                              Deputy Clerk

EDC 3-070 (New 4/21/00)